**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**


*In re* **D.M., R.H., and K.U.**

**No. 21-0373** (Kanawha County 20-JA-400, 20-JA-401, and 20-JA-402)


**MEMORANDUM DECISION**


Petitioner Mother M.H., by counsel Carl J. Dascoli Jr., appeals the Circuit Court of Kanawha County's April 9, 2021, order terminating her parental rights to D.M., R.H., and K.U.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Elizabeth G. Kavitz, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) adjudicating her as an abusing parent, (2) terminating her parental rights, and (3) denying her request for post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the instant proceedings, Child Protective Services ("CPS") initiated an in-home safety plan with petitioner in February of 2019 due to her substance abuse which threatened the children. As a result of the plan, the DHHR provided services to petitioner from February of 2019 through June of 2020.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

In August of 2020, the DHHR filed an abuse and neglect petition alleging that petitioner tested positive for drugs upon the birth of R.H. The DHHR alleged that petitioner was unemployed at the time of the child's birth and it was unclear when she was last employed. The DHHR further alleged that petitioner tested positive for THC, Neurontin, and buprenorphine in June and was involved in an earlier CPS case. A CPS worker spoke with petitioner after R.H.'s birth, and the DHHR alleged that petitioner would not disclose whether she received prenatal care while pregnant with R.H. Petitioner did state that she began seeing a physician three weeks prior to the child's birth. The CPS worker also visited R.H. in the hospital at which time a nursing supervisor told her that the child had yet to show signs of improvement from her withdrawal symptoms. According to the petition, the nursing supervisor also indicated to the CPS worker that petitioner had not visited the child while she was in the hospital. Finally, the DHHR alleged that petitioner contacted the CPS worker a few days later and stated that she had written up a "contract" with her aunt to give the aunt guardianship of her three children. According to the petition, petitioner indicated that the "contract" had been notarized, and "therefore CPS would have no reason to further assess or take any actions regarding the current allegations."

The next month, the circuit court held a preliminary hearing wherein the DHHR presented petitioner's physician who testified that she prescribed buprenorphine to petitioner to help her combat her drug addiction. The physician also testified that petitioner tested positive for controlled substances, such as non-prescribed Neurontin and marijuana, on several drug screens. She further testified that petitioner quit the drug treatment program after giving birth to R.H. and did not receive post-partum services. Next, a CPS worker testified to many of the allegations in the petition. Specifically, the CPS worker testified that petitioner tested positive for Neurontin upon the birth of R.H. and had previous substance abuse issues in a prior CPS case. The worker also testified that petitioner contacted her to state that she had "signed her [parental] rights over to her aunt" and that there would be no reason for the worker to continue her assessment of petitioner. The worker admitted that upon inspection petitioner's home appeared clean, stocked with food, and a child inside the home at the time appeared clean and well nourished. After hearing the evidence, the circuit court found there was probable cause that the children were in imminent danger and granted the DHHR physical and legal custody of the children.

The circuit court held an adjudicatory hearing in November of 2020, wherein petitioner moved for a continuance because her parental fitness evaluation was incomplete. The circuit court granted the motion and ordered petitioner to provide "a list of job applications and/or interviews and any employment efforts that she has made at the next hearing." The following month, the circuit court held a hearing, during which petitioner's counsel stated that petitioner desired to stipulate that her substance abuse issues prevent her from being an appropriate parent. The circuit court placed petitioner under oath and questioned her as to her stipulation. After questioning, the court found that petitioner failed to meaningfully stipulate and ordered the parties to proceed with adjudication. Under questioning by the DHHR, petitioner admitted to obtaining Neurontin online without a prescription. Petitioner also admitted to lying at a previous hearing about being prescribed Gabapentin and acknowledged taking the controlled substances during her pregnancy with R.H. Petitioner also admitted to recently relapsing and using methamphetamine. The DHHR

moved the circuit court to consider all prior evidence for adjudication, which the court granted. After considering the evidence, the circuit court adjudicated petitioner as an abusing and neglecting parent and ordered that petitioner complete an inpatient substance abuse treatment program.

The circuit court held a final dispositional hearing in April of 2021. The DHHR moved the circuit court to take judicial notice of all prior testimony, findings of fact, and conclusions of law; the court granted that motion. Next, the DHHR put on evidence that petitioner failed to comply with services offered to her. Specifically, the DHHR established that petitioner left an inpatient drug treatment program against medical advice and had been disrespectful to staff during her stay. The DHHR also established that petitioner had failed to submit to drug screens throughout the proceedings, participating in only five total screens. A CPS worker testified that petitioner should have participated in two to three drug screens per week. The worker testified that petitioner tested positive for amphetamine, methamphetamine, marijuana on a screen in January of 2021 and positive for methamphetamine again on another screen later that month. In total, petitioner missed approximately twenty-four screens between January and April of 2021. Finally, petitioner testified that she left her inpatient drug treatment program early but was participating in outpatient treatment services. Petitioner also acknowledged that she had failed to participate in many of her drug screens.

In light of the evidence presented at the dispositional hearing, the circuit court found that petitioner failed to meaningfully participate in the services afforded her despite the assistance of service providers. The circuit court also found that petitioner failed to participate in several drug screens and misled the court as to her prescriptions and substance abuse. Based upon this evidence, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interests of the children to terminate petitioner's parental rights.[2] The circuit court also denied petitioner post-termination visitation with the children. The circuit court entered an order reflecting its decision on April 9, 2021. Petitioner appeals from this order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there

---

[2]D.M.'s father's parental rights were previously terminated. R.H.'s father's parental rights remain intact. However, the DHHR indicates that it has moved for the termination of R.H.'s father's parental rights and anticipates such termination. The permanency plan for both children is adoption by their paternal aunt. The permanency plan for K.U. is to remain in the custody of her nonabusing father.

is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner argues that the circuit court erred in adjudicating her as an abusing and neglecting parent. According to petitioner, the DHHR "failed to meet the clear and convincing evidence standard that the [p]etitioner's [] children were abused and neglected in her custody." We disagree.

We have previously held as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). West Virginia Code § 49-1-201 defines an "abusing parent" as a "parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect."

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing and neglecting parent of the children. The circuit court took judicial notice of evidence presented at the preliminary hearing, which indicated that petitioner tested positive for controlled substances, such as Neurontin and marijuana, on several drug screens while pregnant with R.H. At the preliminary hearing, a CPS worker testified that petitioner tested positive for Neurontin upon the birth of R.H. and had previous substance abuse issues in a prior CPS case. While petitioner argues that the use of Neurontin "as a means of coping during a term of pregnancy" should not qualify as abuse and neglect, petitioner's drug use caused R.H. to be born drug-exposed and spend time in the neonatal intensive care unit, where she suffered from withdrawals. The CPS worker also testified that petitioner contacted her—just days after the child's birth—to state that she had "signed her [parental] rights over to her aunt" and that there would be no reason for the worker to continue her assessment of petitioner, in an attempt to circumvent the CPS investigation. Further, under questioning by the DHHR, petitioner admitted

4

at the adjudicatory hearing to obtaining Neurontin online without a prescription. Petitioner also admitted to lying at a previous hearing about being prescribed Gabapentin and acknowledged taking the controlled substances during her pregnancy with R.H. Petitioner also admitted at the adjudicatory hearing to relapsing and using methamphetamine. Viewing the record in its entirety, we find that the circuit court did not err in adjudicating petitioner as an abusing and neglecting parent based on the clear and convincing evidence that she abused controlled substances and lied to the court about her drug prescription.

Next, petitioner argues that the circuit court erred in terminating her parental rights because she had an interest in the care of the children. Petitioner contends that she participated in and was successful with services during the proceedings, including "taking huge steps to address any issues regarding substance abuse." Petitioner points to testimony from service providers and a caseworker noting that she made progress in services, including inpatient drug treatment. Petitioner acknowledges that she left inpatient treatment early but states that she obtained employment and began participating in drug screens again upon her departure. We find no error in the circuit court's termination of petitioner's parental rights with regard to this issue.

Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are directed to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) defines "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" as follows: "the abusing [parent] . . . ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help."

Here, petitioner's parental rights were terminated because she could not ensure the safety of the children as a result of her continued substance abuse. Notably, petitioner does not dispute that she missed or failed several drug screens through the proceedings, instead pointing to a single negative drug screen prior to entering inpatient treatment. While petitioner also testified to progress made during her inpatient drug treatment program, she does not dispute that she left the twenty-eight-day program after just fourteen days. Petitioner contends that she left the program early due to contracting coronavirus and receiving insufficient medical treatment. However, the DHHR presented evidence at the dispositional hearing that petitioner left the program against medical advice and had been disrespectful to staff during her stay. Petitioner also failed to find another inpatient treatment program, in violation of the circuit court's order. Ultimately, petitioner's assertion that she could remedy her issues with more time ignores the fact that she failed to stay drug free, participate in drug screens, or follow court orders sufficiently to justify the return of the children to her care.

Based on the foregoing, we find no error in the circuit court's refusal to grant petitioner a less-restrictive alternative than the termination of her parental rights, given that we have previously held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the circuit court's termination of petitioner's parental rights.

Finally, petitioner argues that the circuit court erred in denying her motion for post-termination visitation. In regard to post-termination visitation, we have previously held that

"[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002).

Here, the circuit court found that it was not in the children's best interests to grant visitation. Petitioner abused drugs throughout the proceedings and failed to exercise visitation with the children during the proceedings as a result of her failure to participate in court-ordered drug screens. Accordingly, we find no error in the circuit court's denial of petitioner's motion for post-termination visitation with the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 9, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:
Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton